**Granite Mutual Insurance Company v. Carter**

*Ira P. Tiger* of *Schnader, Harrison, Segal & Lewis,* for plaintiff.

*Lawrence G. Metzger* of *Gross & Sklar,* for defendants.

BOLGER, J., May 16, 1973.—Uninsured motorist coverage for automobiles is a recently coined legal term. Where an insured motorist suffers personal injuries through the negligence of an uninsured motorist, a State statute provided that the insurance carrier for the insured motorist must compensate him for such injuries, for an additional fee of $2. Originally the insured had the right to reject this coverage, but presently it is mandatory for all policies. The amendment to the uninsured motorist coverage statute of December 19, 1968, P. L. —, no. 397, sec. 1, eliminating the right of rejection, effective January 1, 1969, 40 PS §2000, is not applicable in this case.

The Granite Mutual Insurance Company (Granite) seeks an injunction against defendants Carter and the American Arbitration Association (AAA) to enjoin arbitration proceedings by the AAA of a claim made by defendants Carter on an automobile policy issued by Granite, the application for which contained a

written rejection of uninsured motorist coverage (UMC) permitted under the Act of August 14, 1963, P. L. 909, sec. 1, 40 PS §2000.

On December 17, 1968, Levin, J., dismissed preliminary objections in the nature of a demurrer filed by defendants Carter on the ground that a demurrer admits the allegations in the complaint and there must be a judicial determination of the existence of a contract to arbitrate.

The only issue now before the court is the arbitrability of the policy. Bolger, J., held a trial on December 6, 1972, and an argument on March 7, 1973.

On October 29, 1965, Miss Carter, accompanied by her brother, George Carter, went to the office of Universal Insurance Agency (Universal) to obtain insurance on her 1955 Buick. She had a learner's permit and her brother a driver's license. She paid the insurance fee and secured a receipt. She signed an application, was given a copy of it, and Granite issued a policy for the period 10/29/65 to 12/31/65. Both defendants Carter sustained injuries on November 5, 1965, from an uninsured motorist.

The application contained the provision:

"H. Uninsured Motorist Coverage has been explained and offered to me and I do (  ) do not (  ) wish to accept this coverage at this time."

A check mark was made in the "do not (  ) wish to accept this coverage" box.

Beneath this in smaller type was printed:

"I understand that if I have not accepted Uninsured Motorist Coverage at this time, I may at any time have such coverage added to my policy only by sending written request by certified mail, with $2.00 to the home office of the company and to take effect when written endorsement is issued by an authorized representative of the company."

No such written request was made.

Miss Carter testified that the Universal salesman told her that she had full coverage, and it was not until after the accident of November 5, 1965, that she realized she did not have full coverage.

She stated that when she and her brother were at the door leaving, the Universal man "called us back and told me there was one more paper to sign." She identified this as the application.

George Carter testified that his sister in his presence told the Universal man "she wanted the insurance and she wanted full coverage," and also, "I told him that I wanted the $2.00 insurance which would cover everything if anything would happen."

And he further testified:

"A. 'I told him I wanted full coverage and in case anything would happen and the guy wasn't insured.'

"Q. 'What did he say to you?'

"A. 'He said, "It's all in the contract." ' "

This testimony as to the type of coverage desired and the assurance by Universal that UMC was provided was not contradicted or refuted by Granite and must be taken as true. The testimony is entirely credible, particularly as the $2 charge for UMC is de minimis.

We, therefore, made the following

### FINDINGS OF FACT

1. Universal is the agent of Granite.

2. Defendants ordered the UMC coverage.

3. Universal consciously and deliberately omitted the UMC coverage.

4. Defendants did not waive the UMC coverage.

5. The UMC coverage is a valid part of the insurance contract.

6. The "binder" issued by Universal is an obligation of Granite.

Granite bases its defense on legal reasons, principally that defendant waived the UMC, that Universal as a broker, not an agent, of Granite, lacked the right to issue a binder, and that defendant signed the application without reading it.

The UMC statute provisions as to waiver must be "broadly and liberally construed" and "that portion of the statute permitting rejection of uninsured motorist coverage detracts from the public policy considerations and must be narrowly and strictly construed": Johnson v. Concord MI Co. & Temple Ins. Agency (Supreme Ct. Pa., Jan. term, 1973, no. 343, pp. 5-6, filed January 19, 1973.)

Here the waiver was against the express instructions of the defendant and contrary to the statement of the Universal salesman and is unquestionably invalid.

A basic issue is the status of Universal. It is variously described as a broker, an agent and an authorized representative.

A neologism is introduced into legal terminology by the president of Granite. He described Universal as a "producer." While the courts are always willing to adapt their vocabulary to modern usage, this addition is rejected as adding nothing to the clarification of the issue.

Granite introduced a certification of the Insurance Commissioner, which is not too helpful. It states that Jerome M. Boris was issued a broker's license at 4209 Chestnut St., Phila., Pa., that this license was revoked and he was later reinstated as an "active officer of Agency Brokers, Inc., . . . at 4211 Chestnut St., Phila., Pa." At the end it states that Jerome H. Boris or Universal Insurance Agency were not

licensed as an agent for Granite. *It does not state whether Universal was licensed as a broker for Granite.*

The president of Granite testified that he had discussed the arrangements between Granite and Universal with Mr. Boris, who headed Universal. The court assumes that the proper procedures were followed and that Mr. Boris is in some way connected with Universal and possessed a broker's license.

The connection and relationship of Universal to Granite vitiates the argument that Universal was a broker not an agent. All the pieces form a mosaic of agency: the method of bookkeeping, the large volume of business, the system of payment in lump sums, the representations of the Universal salesman, Universal prepared the policy, the practice of Granite countersigning the policy on receipt of the application and policy from Universal and of mailing the policy to Universal and not to the insured, and the participation of Granite in setting up the Universal office.

Further, the application form states that Universal is an agent. At the bottom of the application appears the line:

"Placed with (co # & Init) *G-28* Agent ( # & Init) *368HT* by ( # & Init) —."

The insertions "G-28" and "368HT" are in the handwriting of the Universal Salesman on the original transmitted by Universal to Granite. The copy of the application furnished to defendant does not contain the printed matter but includes the handwritten insertions.

The evidence demonstrates without any doubt or ambiguity that in this transaction Universal acted as the agent of Granite, and at no time acted as broker for the purchaser.

The court is not ruling on the effect of the statute

of limitations. At the trial counsel for Granite agreed that this issue fell within the jurisdiction of the arbitrator. The effect of any possible fraud or deceit in tolling the statute is for the consideration of the arbitrator.

On the face of the copy of the application given defendant is the rubber stamp statement:

"This binder is good for no more than thirty days from the date of issue. A picture of this application will be attached to your policy as a condition of your insurance. Please be sure your answers are correct."

This statement is not stamped on the original application form, but constitutes a valid part of the insurance contract.

As to the failure of defendant to read the application before signing, Johnson v. Concord, et al., supra, holds that

"Thus, the insured's failure to read the contract neither relieves insurer of its duty to include such protection nor add validity to the claimed rejection."

And the court specifically states:

"We agree that 'because uninsured motorist coverage has been legislatively declared to be a matter of public policy, a deletion of coverage is not to be determined by traditional rules of waiver and estoppel.' "

In Commonwealth v. Wright, 449 Pa. 358, 362 (1972), the court, citing "a long series of cases" stated:

"This court has long expressed the view that all questions arising under uninsured motorist coverage should be determined by arbitration."

The court finds that a valid contract containing the UMC exists between Granite and defendants and makes the following

## CONCLUSIONS OF LAW

1. Universal was the agent of Granite.

2. Universal had the authority to issue a binder for Granite and the policy was effective as of the date of the accident.

3. The UMC is a part of the policy.

4. Defendants ordered the UMC.

5. Granite is liable for the wrongful act of its agent in deliberately falsifying the application as rejecting UMC.

6. The provision for AAA arbitration is included in the policy.

## DECREE NISI

And now, this May 16, 1973, it is hereby ordered, adjudicated and decreed that the petition for an injunction is denied and the matter is referred to the American Arbitration Association for a prompt decision on all issues of law and fact. The Prothonotary of Philadelphia County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or counsel of record as required by the rules of equity practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 20 days after said notice, this shall be entered as a final decree by the prothonotary.